IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEHOVAH KEARSE,

     Plaintiff,

       v.

NANCY A. BERRYHILL,

     Defendant.

\*      Civil Action No. RDB-17-3028

\*      \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## **MEMORANDUM OPINION**

Plaintiff Jehovah Kearse ("Plaintiff" or "Kearse") brings this action against Nancy A. Berryhill, in her official capacity as Acting Commissioner of the United States Social Security Administration ("Defendant" or the "Agency"), alleging that his supervisor, an African-American female, discriminated against him on the basis of his race and gender and retaliated against him by terminating his employment after his one-year probationary period, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Am. Compl., ECF No. 9.) Currently pending before this Court is the Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 10) and the Plaintiff's Motion to Defer Ruling on Defendant's Motion for Summary Judgment Pending Discovery (ECF No. 16).[1] The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. Dec. 1, 2018).

---

[1] Also pending before this Court are two additional Motions. First, the Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment with respect to the Original Complaint (ECF No. 8), which is MOOT. Second, the Plaintiff's unopposed Motion for Extension of Time to Respond to the Defendant's Opposition to the Motion to Defer Ruling (ECF No. 21), which is GRANTED and this Court will consider the Plaintiff's Reply to the Defendant's Opposition.

As explained below, there are no genuine issues of material fact based upon the record before this Court, and no reasonable basis for concluding that the discovery Kearse requests would reveal a triable issue of fact. Therefore, the Defendant's Motion, treated as a Motion for Summary Judgment, is GRANTED (ECF No. 10) and Plaintiff's Motion to Defer Ruling (ECF No. 16) is DENIED.

## BACKGROUND

One July 7, 2012, Plaintiff Jehovah Kearse ("Plaintiff" or "Kearse") an African-American male, began working for the United States Social Security Administration (the "Agency") on a one-year probationary term as a GS-14 Division Director for the Division of Policy and Purchase Card Administration in the Office of Acquisition and Grants ("Division Director"). (Record of Investigation ("ROI"), ECF No. 10-2, Kearse Aff., Ex. 6 at 2-3.)[2] As a Division Director, Kearse was responsible for reviewing and preparing acquisition policy, conducting training, and supervising policy analysts, and he asserts that the workload was extremely heavy. (*Id.* at 4.) His immediate supervisor was the GS-15 Director of Acquisition and Grants, Allyson Stokes, an African-American female. (*Id.* at 2, 4.) In addition to Plaintiff, Stokes supervised seventeen other employees in various positions, including procurement analysts who reported to Kearse. (Ex. 5B.) Among the eighteen employees were eight Caucasian, eight African-American, and two Asian employees, and seven male and eleven female employees. (*Id.*)

In February of 2013, Kearse and Stokes met for Kearse's mid-year performance

---

[2] Record of Investigation ("ROI") refers to the record compiled at the administrative level of the Plaintiff's claims. Unless indicated otherwise, all exhibits referred to are from the Record of Investigation (ECF No. 10-2).

review. (Ex. 14e.) While Kearse alleges that Stokes appeared pleased with his performance during his first six months (Am. Compl., ECF No. 9 at ¶ 20), his written assessment identified several areas in which Kearse needed improvement or "more emphasis." (Ex. 14e.) Specifically, the mid-year performance review stated:

> Interpersonal Skills: …He communicates very well orally and in writing. His ideas and thoughts are conveyed clearly and concisely. [Mr. Kearse] tailors message appropriately for the intended audience, and ensures information is communicated effectively. Improvement is needed in the area of returning emails promptly. At the least, emails should be acknowledged within 24 hours after receipt, and include an estimated time of providing the response to the inquiry. Improvement is also needed in the area of keeping staff apprised when time will be spent away from the office. . . .

> Participation: …[Mr. Kearse] typically provides reports, controlled correspondence, and documents within reasonable timeframes. More emphasis is needed on managing the workload so that controls and other assignments are completed timely, and documents are reviewed timely…. He needs to ensure monthly acquisition personnel training and quarterly COTR training sessions are held or inform management if these sessions will not be held on a monthly or quarterly basis as scheduled. . . .

> Demonstrates Job Knowledge: …[Mr. Kearse] stays abreast of regulation and policy changes. More emphasis is needed in ensuring analysts keep policies and procedures up to date with regulatory changes, and as requested by management. …[Mr. Kearse] writes extremely well, and articulates logically and clearly while communicating orally. His email correspondence is clear, concise, and well written. More emphasis is needed on ensuring the work products of others are in an active voice, clear, and concise.

> Achieves Business Results: …[Mr. Kearse] strives to handle day-to-day work challenges effectively. More emphasis is needed on completing a majority of the work assignments timely and as scheduled, and using a balanced approach to complete assignments, reviews, and read and respond to emails. …

> Demonstrates Leadership: …[Mr. Kearse] allows his employees to work independently, and adjusts resources as necessary. He is a good role model and demonstrates good ethics. He encourages the staff to work effectively and efficiently. More emphasis is needed on timely reviewing work products of the analysts so as not to delay processing. [Mr. Kearse] is very supportive of his

staff, and interacts well with them, thus creating and maintaining a positive work environment. …

Manages Performance: [Mr. Kearse] needs to conduct performance assessments and performance discussions timely per the schedule established by the agency. He establishes and communicates appropriate performance expectation, provides development for his staff, and makes training recommendations consistent with the needs of the staff.

(*Id.*)

Kearse asserts that due to the nature of the Division Director position, he frequently worked over forty hours per week. (ECF No. 9 at ¶ 22.) Pursuant to the Agency's overtime policy, employees request "credit hours" for overtime work. (Kearse Aff., Ex. 6 at 7.) Accordingly, Stokes testified that she required all of her employees to submit oral or written requests to work credit hours indicating what tasks they intended to complete. (Stokes Aff., Ex. 7 at 5.)

At some unspecified time during his one-year probationary term, Kearse alleges that Stokes required him, but not other Caucasian females, to request credit hours in writing and also provide a written account of his overtime activity afterwards. (Kearse Aff., Ex. 6 at 7-8.) Stokes testified that she only required Kearse, and none of the other employees under her supervision,[3] to submit reports for work completed because Kearse began requesting a considerable amount of credit hours early in his tenure, and she needed to know what he was completing during that time. (Stokes Aff., Ex. 7 at 5.)

It is undisputed that although Stokes required Kearse to submit written requests and follow up reports, Stokes never denied any of Kearse's requests for credit hours. Both

---

[3] Two of those employees, Joan Smith and Phyllis Hopson, similarly testified that they had to provide requests to work credit hours and indicate the project they would be completing, but did not have to submit reports for work completed. (Smith Aff., Ex. 10 at 4; Hopson Aff., Ex. 9 at 4.)

Kearse and Stokes testified, however, that once Stokes imposed this requirement, Kearse began requesting credit hours less frequently. (Stokes Aff., Ex. 7 at 56; EEO Complaint, Ex. 1 at 4.) Kearse asserts that he discussed with Stokes "the apparent disparity in treatment" between him and other Caucasian female employees. (Kearse Aff., Ex. 6 at 3.) He asserts that thereafter, "Stokes' attitude towards [him] immediately changed" and "she became quite hostile." (*Id.*)

On July 8, 2013, Stokes informed Kearse that his employment would not continue past his one-year probationary period. (Kearse Aff., Ex. 6 at 6.) His Letter of Termination indicated that despite his mid-year evaluation, Stokes had continued to observe Kearse perform deficiently in managing his workload, completing his work in a timely and correct manner, and managing his staff's deadlines. (Ex. 14f.) Seth Binstok, Kearse's second line supervisor and a Caucasian male, testified that although Stokes did not need his approval to terminate Kearse's employment, he did not believe that Kearse had sufficiently improved from his mid-year performance evaluation and agreed with her decision. (Binstok Aff., Ex. 8 at 4.)

On September 6, 2013, Kearse filed a Charge of Discrimination with the Equal Employment Opportunity ("EEO") program, asserting that he was terminated on the basis of his race and gender and because he had complained to Stokes about disparate treatment with respect to credit hours. (EEO Complaint, Ex. A.) The Social Security Administration investigated the complaint from December 30, 2013 through February 28, 2014, and compiled a Report of Investigation ("ROI") on April 7, 2014. (*Id.*) Among the information collected in the one-hundred and twenty page report was an affidavit and rebuttal statement

by the Plaintiff Jehovah Kearse; an affidavit by his supervisor Allyson Stokes; an affidavit by his second-level supervisor Seth Binstok; affidavits or letters by five Procurement Analysts who reported to Kearse; and documents concerning Plaintiff's position. (*Id.*)

On July 10, 2014, Kearse requested a hearing before the U.S. Equal Employment Opportunity Commission ("EEOC"). (Final Agency Determination, ECF No. 10-3 at 2.) When a hearing had not occurred by June of 2017, Kearse withdrew his request for a hearing and sought to remand his complaint back to the Agency. (*Id.*) Subsequently, on July 18, 2017, the Agency issued a Final Agency Decision, finding that Kearse's termination was not discriminatory on the basis of his race or gender or retaliatory for engaging in protected activity. (*Id.*) Specifically, the SSA determined that Kearse failed to establish a *prima facie* case for discrimination or retaliation and, even if he had, the Agency had a legitimate reason for terminating the Plaintiff's employment which he did not show was pretext for discrimination. (*Id.*)

On October 16, 2017, Kearse filed a Complaint in this Court, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Compl., ECF No. 1.) After the Defendant filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 8), the Plaintiff filed an Amended Complaint (ECF No. 9.) The Defendant then filed a Motion to Dismiss the Amended Complaint or, in the alternative, Motion for Summary Judgment (ECF No. 10.) After requesting two extensions of time to file a response or reply, which this Court granted, Kearse filed a Response in Opposition (ECF No. 15) and a Motion to Defer Ruling on Defendant's Motion for Summary Judgment Pending Discovery (ECF No. 16), asking this

Court to permit him to conduct discovery pursuant to Federal Rule of Evidence 56(d).

## STANDARD OF REVIEW

The Defendant filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (ECF No. 10.) A court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If it does so, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Therefore, a motion styled in this manner implicates a court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Sager v. Hous. Com'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.)). As explained below in the context of Plaintiff's Motion to Defer Ruling, in this Court's discretion, the Defendant's Motion is treated as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting

*Anderson*, 477 U.S. at 248). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court must take all facts and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The non-movant "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). A court should enter summary judgment when a party fails to make a showing sufficient to establish elements essential to a party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322-23.

## ANALYSIS

The Plaintiff Kearse, an African-American male, claims that his supervisor, an African-American female, discriminated against him on the basis of his race and gender and retaliated against him by terminating his employment after his one-year probationary period, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*[4] In his

---

[4] The Amended Complaint alleged Kearse was discriminated against both when he was terminated and also when additional "terms and conditions" were imposed on him with respect to his requests for credit hours. (ECF No. 9 at ¶ 43.) Plaintiff's Response to the Motion to Dismiss, however, does not address the Defendant's argument that the requirements concerning the credit hours do not amount to adverse employment actions, and accordingly the Plaintiff concedes this point. *Stenlund v. Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the

Motion to Defer Ruling on Defendant's Motion for Summary Judgment Pending Discovery, he also asserts that a Motion for Summary Judgment is premature on the present record and asks this Court to permit him to conduct discovery. (ECF No. 16.) On the other hand, the Defendant argues that the undisputed facts of this case gathered from the Record of Investigation and additional documents provided by the Defendant show that Kearse's termination was not discriminatory or retaliatory, but rather his supervisor terminated his employment at the end of his one-year probationary period because he was not meeting the Agency's legitimate expectations. This Court addresses the Plaintiff's discrimination and retaliation claims and his Motion to Defer Ruling below.

## I.   Defendant is entitled to Summary Judgment on Plaintiff's Title VII Claims

### a.   Discrimination Claim (Count I)

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . .." § 2000e-2(a)(1). The Plaintiff asserts that the Defendant discriminated against him on the basis of his race and gender when he was terminated at the end of his one-year probationary period. Where, as here, the Plaintiff has not presented any direct evidence of discrimination, he must establish his claim by circumstantial evidence through the "pretext" framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

---

point."). Moreover, an adverse employment action is one that "adversely affects the terms, conditions, or benefits of the plaintiff's employment, so that the employee suffers a "significant detrimental effect" from the action at issue. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). The Plaintiff's allegations that he was required to submit written requests and follow up reports in order to obtain credit hours, without any allegations that any of his requests were denied, do not constitute adverse employment actions.

Under the "pretext" framework, the burden is first on Plaintiff to make a *prima facie* case of disparate treatment by proving that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate expectations at the time of the adverse employment action; and (4) similarly situated employees outside of his class received more favorable treatment. *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F. Supp. 3d 398, 420 (D. Md. 2015) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). If Kearse makes this showing, the second step places the burden on the employer to assert a "legitimate, non-discriminatory reason" for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817. If the employer meets this step, the burden then shifts back to Plaintiff to demonstrate that the employer's purported reason was "pretextual." As this Court stated in *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835 (D. Md. 2004), *aff'd sub nom*, 134 F. App'x 627 (4th Cir. 2005), "[w]hile the *McDonnell Douglas* framework involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of Title VII." 334 F. Supp. 2d at 841. Accordingly, on a motion for summary judgment, "if the plaintiff cannot present facts that would permit a reasonable inference that the stated reason is a pretext for discrimination, summary judgment in favor of the defendant should be granted." *Huie v. Univ. of Maryland Med. Ctr.*, No. RDB-04-2987, 2006 WL 197183, at *3 (D. Md. Jan. 23, 2006) (citing *Rowe v. Marley Co.,* 233 F.3d 825, 830 (4th Cir. 2000)).

It is undisputed that as an African-American male, Kearse is a member of a protected class. In addition, his termination is clearly an adverse employment action because it

"adversely affect[ed] the terms, conditions, or benefits of his employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). The Defendant argues, however, that the Plaintiff fails to meet the third and fourth elements of a *prima facie* case and, further, the Defendant had a legitimate reason for terminating his employment that the Plaintiff has not shown was pretext for discrimination. As explained below, even assuming that Kearse established a *prima facie* case, based on the administrative record and facts before this Court the Agency had a legitimate, non-discriminatory reason for terminating Kearse that he has not shown is pretext for discrimination.

When evaluating whether an employer has articulated a legitimate, non-discriminatory reason for disparate treatment, "this Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette v. Corning, Inc.,* 133 F.3d 293, 298-299 (4th Cir. 1998); *Staley v. Guenberg*, No. 13-1875, 575 F. App'x. 153, 156 (4th Cir. June 6, 2014). Thus, "'when an employer articulates a reason for [its treatment of the plaintiff]' that the statute does not proscribe, 'it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [employment decision]." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017) (quoting *DeJarnette*, 133 F.3d at 299).

Kearse does not dispute that his employment as a GS-14 Division Director was subject to a one-year probationary term beginning in July of 2012. In February of 2013, he received his mid-year performance evaluation. (Ex. 14e.) The evaluation both commended Kearse in some areas, but also identified several areas for improvement and more emphasis.

For example, in the area of interpersonal skills, the evaluation stated Kearse "communicates very well orally and in writing" and "his ideas and thoughts are conveyed clearly and concisely," while it also stated "improvement is needed in the area of returning emails promptly" and "improvement is also needed in the area of keeping staff apprised when time will be spent away from the office." (*Id.*) Similarly, in the area of participation, the evaluation commended Kearse for providing reports, controlled correspondence, and documents within a reasonable time frame, while also indicating that "more emphasis is needed on managing the workload so that controls and other assignments are completed timely, and documents are reviewed timely." (*Id.*) Of the six performance areas, each highlighted Kearse's performance while identifying areas for improvement or more emphasis. (*Id.*)

Kearse's termination letter then indicates that Stokes continued to observe Kearse failing to manage his workload, complete his work correctly and timely, hold his staff accountable, and effectively follow up on projects. (Ex. 14f.) Seth Binstok, Kearse's second line supervisor and a Caucasian male, also testified that he believed that Kearse had not sufficiently improved from his mid-year performance evaluation and agreed with Stokes' decision to terminate Kearse's employment. (Binstok Aff., Ex. 8 at 4.) Therefore, the Agency has met its burden of production of articulating a legitimate, non-discriminatory reason for Kearse's termination at the end of his one-year probationary period.

Accordingly, the burden shifts back to the Plaintiff under the *McDonnell Douglas* framework to demonstrate that the Agency's purported reason for terminating him was "pretextual." *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. 1817. To meet this burden, a plaintiff must show "both that the reason was false, and that discrimination was the real

reason" for the disparate treatment. *Adams v. Tr. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (emphasis omitted). From the Record of Investigation and the parties' submissions, there is no genuine dispute of material fact that the Agency's legitimate reason for terminating Kearse's employment was not pretext for discrimination.

First, Plaintiff has not presented any evidence that the proffered reasons for his termination were false. At most, the Plaintiff only offers his speculative belief that despite the language of the mid-year evaluation, he was performing his position well and meeting the Agency's legitimate expectations. Relatedly, he asserts that that the mid-year performance evaluation "d[id] nothing to suggest possible doubt about retention of employment" and Stokes "made no specific reference to anything showing a less than preferable level of 'emphasis.'" (Pl.'s Resp., ECF No. 15 at 8.) However, "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998)). Aside from his own beliefs, Kearse has not directed this Court to any evidence that Stokes' assessment of his performance was dishonest or not the real reason for his termination. *See Hawkins*, 203 F.3d at 279 (explaining that the plaintiff's claims that her supervisor's "criticisms were inaccurate" and she actually performed her job well were insufficient to show that the defendant's stated reasons for terminating her were not the real reasons for her termination).[5]

---

[5] To the extent the Amended Complaint alleges that Kearse's staff came forward after his termination stating

Second, Kearse has not shown that racial or gender biases were the real reasons Stokes terminated him at the end of his one-year term. "[I]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 147m 120 S. Ct. 2097 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519, 113 S. Ct. 2742 (1993)) (emphasis in original). At the outset, when the Plaintiff Kearse filled out his affidavit with respect to the administrative proceedings in January of 2014, he testified that he believed Stokes did not want him working for the Agency "for some reason. It is difficult for me to say exactly why . . . ." (Kearse Aff., Ex. 6 at 6.) He then when on to say that "[b]ut given the treatment she accorded me relative to my white female counterparts," he believed he was terminated because of his race and gender. (*Id.*) As explained below, however, the "treatment" Plaintiff refers to were the requirements concerning his requests for credit hours, and it is undisputed that Stokes required *all* of her employees to submit requests to work credit hours, and *only* required Kearse to submit follow-up reports.

The thrust of Kearse's discrimination claim is that he, an African-American male, was required to submit in writing requests for credit hours and afterwards submit a report indicating what tasks he had completed, while other, Caucasian female employees were permitted to orally request credit hours and did not have to provide a follow up report. At the outset, this Court notes that as explained above, it is undisputed that the requirements Stokes imposed on Kearse concerning credit hours were not adverse employment actions,

---

that Kearse "listened and heard what we had to say" and "boost[ed] morale, uplift[ed] spirits, and buil[t] positive attitudes about the work place," the Fourth Circuit has held that "[t]he alleged opinions of [a plaintiff's] co-workers as to the quality of [his or] her work" are "close to irrelevant." *Hawkins*, 203 F.3d at 280 (citation omitted).

and Stokes never denied Kearse's requests for credit hours. *See supra* n. 4. Moreover, it undisputed that pursuant to the Agency's policy, Stokes required all employees to submit oral or written requests for credit hours (Stokes Aff., Ex. 7 at 5), which Kearse acknowledged he understood in his EEO Complaint. (EEO Compl., Ex. 1 ("Upon starting work at SSA and learning about credit hours, I observed that common practice was that employees could request to work credit hours verbally or via email.").) Accordingly, Stokes, an African-American female, required all of the employees she supervised—eight Caucasian, eight African-American, and two Asian employees and seven male and eleven female employees—to request credit hours in advance, pursuant to the Agency's policy. (Ex. 5B; Stokes Aff., Ex. 7 at 5.)

To the extent Kearse is relying on the fact that Stokes required him to submit a written request for hours, and supplement the request afterwards with a report of the work he completed, Kearse also has not shown that these requirements were implemented because of racial or gender bias. Stokes testified that she imposed the particular requirements on Kearse because he began requesting a considerable amount of credit hours early in his tenure, and she needed to know what he was completing during that time. (Stokes Aff., Ex. 7 at 5.) Moreover, it is undisputed that Stokes only required Kearse, and none of the other male or African-American employees, to follow such procedures. (*Id.*)

Finally, this Court addresses the Plaintiff's vague assertion that his "white female predecessor" was not required to "justify use of credit hours in advance" or submit reports afterward. (Am. Compl., ECF No. 9 at ¶ 26.) During the EEO proceedings, the only additional information Kearse offered about this alleged comparator was that this employee

was *not* his immediate predecessor, contradicting the Amended Complaint. (Kearse Aff., Ex. 6 at 3.) Moreover, when using comparator evidence, a plaintiff "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Johnson v. Baltimore City Police Dep't*, No. ELH-12-2519, 2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014) (citing *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014)). The Plaintiff offers no evidence, or even allegations, that the alleged predecessor was similarly situated to him in all relevant respects, including whether she was on a one-year probationary employment, whether she was meeting the Agency's legitimate expectations, or the extent to which she requested credit hours.

In sum, halfway through Kearse's one-year probationary term, he received an evaluation that indicated several areas for improvement or more emphasis. When his supervisor, an African-American female, did not observe him improve in those areas, she decided to terminate his employment at the end of the one-year period. Kearse's second line supervisor, a Caucasian male, agreed with the decision. From the undisputed record, the Plaintiff has failed to present any evidence that his supervisor, in charge of supervising eighteen diverse employees, terminated his employment because of discriminatory animus with respect to his race or gender. All he has offered is his own belief that he was discriminated against because he was required to provide more documentation when requesting credit hours, which the record shows was asked only of him, and not of other male or African-American employees. Moreover, as the United States Court of Appeals for the Fourth Circuit has held, "[a] plaintiff's 'own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory

reasons for a discharge.'" *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016) (citing *Dockins v. Benchmark Commc'ns*, 176 F.3d 745, 749 (4th Cir. 1999)); *see also Frank v. England*, 313 F. Supp. 2d 532, 539 (D. Md. 2004) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989)). Therefore, the Agency had a legitimate reason to terminate Kearse which he has not shown was pretext for racial or gender discrimination, and the Defendant's Motion for Summary Judgment is GRANTED with respect to the Plaintiff's discrimination claim (Count I).

### b. Retaliation Claim (Count II)

Title VII also "prohibits an employer from taking an adverse employment action against any employee 'because he has opposed any practice made an unlawful employment practice.'" *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005) (quoting 42 U.S.C. § 2000e–3(a)). The Plaintiff claims that he was terminated for engaging in the protected activity of complaining to Stokes about being treated differently with respect to the requests for credit hours on account of his race and gender. As the Plaintiff also has not presented any direct evidence of retaliation, he must establish his claim through the "pretext" framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

For a retaliation claim, a plaintiff makes a *prima facie* case by proving "(1) that [ ]he engaged in a protected activity, as well as (2) that h[is] employer took an adverse employment action against h[im], and (3) that there was a causal link between the two events." *Battle v. Price*, No. PWG-14-2250, 2018 WL 1963791, at *2 (D. Md. Apr. 25, 2018), *appeal dismissed sub nom*, *Battle v. Azar*, No. 18-1641, 2018 WL 6334888 (4th Cir. Aug. 2,

2018) (citing *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc)) (internal quotations omitted). If Kearse makes this showing, the burden shifts to the Defendant to assert a "legitimate, non-retaliatory reason" for the purportedly retaliatory action. *Id.* (quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). If the Defendant meets this step, like the final step of Kearse's discrimination claim, the burden then shifts to Kearse to demonstrate that the employer's purported reason was "pretextual." *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. 1817. Accordingly, Kearse "must establish both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." *Battle v. Price*, 2018 WL 1963791, at *2 (quoting *Foster*, 787 F.3d at 252) (internal quotations omitted).

For the reasons explained above, even if the Plaintiff established a *prima facie* retaliation claim—that he complained to Stokes that he, unlike his female Caucasian counterparts, was required to undergo extra procedures for requesting credit hours, and Stokes fired him because of this complaint, which the Defendant disputes—the Agency has articulated a legitimate, non-retaliatory explanation for terminating him that he has not shown is pretext. The Plaintiff has not demonstrated that the legitimate concerns with respect to his performance raised in his mid-year performance evaluation and restated in his termination letter were not true, or that the real reason Stokes fired him was because he complained about being required to take the extra steps with respect to the credit hours. *See Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 529 (E.D. Va. 2013), *aff'd*, 603 F. App'x 173 (4th Cir. 2015) ("In order to rebut these legitimate reasons, [the p]laintiff must establish first that these legitimate reasons are not truthful and second that the real reason for the

adverse action was [the p]laintiff's engagement in the protected activity.") The Plaintiff's claim is further undercut by the fact that Stokes required all of her employees to request credit hours and state what task they would be completing, and required no one but Stokes to provide written requests or follow up reports. Therefore, even assuming that Kearse did in fact engage in a protected activity, the Agency had a legitimate reason for terminating his one-year probationary employment that he has not shown is pretext. Accordingly, the Defendant's Motion for Summary Judgment is GRANTED with respect to the Plaintiff's retaliation claim (Count II).

## II. Plaintiff's Motion to Defer Ruling on Defendant's Motion for Summary Judgment Pending Discovery is Denied

On the same day the Plaintiff filed his Response in Opposition to the Defendant's Motion to Dismiss the Amended Complaint or, in the alternative, for Summary Judgment, he also filed a Motion to Defer Ruling on Defendant's Motion for Summary Judgment Pending Discovery. (ECF No. 16.) As explained above, the Defendant's Motion implicates this Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure to determine whether or not to accept submissions of materials beyond the pleadings and treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d); *Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Under Rule 56(d), a court may defer considering a motion for summary judgment, or allow time to take discovery, if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . .." Fed. R. Civ. P. 56(d). On the other hand, a court may deny a Rule 56(d) request if "the additional evidence sought for discovery would not . . . by itself create[] a genuine issue of material fact sufficient to defeat summary

judgment." *Ingle v. Yelton,* 439 F.3d 191, 195 (4th Cir. 2006); *Courtney-Pope v. Bd. of Educ. of Carroll County*, 304 F. Supp. 3d 480, 490 (D. Md. 2018). "Moreover, denial of additional discovery is appropriate when the materials sought by the requesting party could have been discovered earlier, including in the course of administrative discovery." *Courtney-Pope*, 304 F. Supp. 3d at 490 (citing *Volochayev v. Sebelius*, 513 F. App'x 348, 351-52 (4th Cir. 2013)).

In support of treating the Defendant's Motion as one for summary judgment, the Defendant attached the Record of Investigation and Final Agency Decision from 2014, which totals over one-hundred and twenty-eight pages. (ECF Nos. 10-2, 10-3.) The Defendant also attached several emails related to Kearse's performance and requests for credit hours. (ECF Nos. 10-4, 10-5.) In his Motion to Defer Ruling, the Plaintiff opposes this Court treating the Motion as one for summary judgment on the ground that he has not been afforded the opportunity to discover facts essential to his opposition. (ECF No. 16.) He asserts that due to the particular administrative proceedings that occurred, including "a lengthy and very unusual passage of time," the Plaintiff did not engage in typical discovery during the administrative proceeding. (ECF No. 22 at 1.) The Rule 56(d) affidavit then submitted by Plaintiff's counsel seeks various forms of discovery, including requests to: depose Stokes and his second level supervisor, Seth Binstok; review all personnel actions Stokes has taken as a "deciding official" with each employee involved identified by race and gender; determine the "specific reasons" for why "more emphasis" was needed in various areas on his mid-year performance review; and compare Kearse's performance to his "White, female predecessor." (Klaminski Aff., ECF No. 16-2 at ¶ 2.) The Defendant argues that the information Plaintiff requests was either already provided to him during the EEO

proceeding, or he had the opportunity to request the information. (ECF No. 20.) Secondarily, the Defendant asserts that even if afforded the requested discovery, the information would not reveal any triable issues of fact. (*Id.*)

The Record of Investigation at the administrative level, the parties' submissions, and the Rule 56(d) affidavit do not reveal a plausible basis for believing that evidence of unlawful discrimination or retaliation would result from granting the Plaintiff's requests for discovery. *See McKinnon v. Blank*, No. DKC-12-1265, 2013 WL 781617, at *11 (D. Md. Feb. 28, 2013) (concluding that the plaintiff revealed "no plausible basis for believing that any evidence of unlawful discrimination would turn up during discovery"). The Record of Investigation in this case was compiled less than a year after Plaintiff's termination, in April of 2014. It is undisputed that Plaintiff was represented by his current counsel during the administrative proceedings, where there was at least a ninety day period for written discovery around mid-2015. (ECF No. 22 at 3.) After Plaintiff revoked his request with the EEOC for a hearing, the agency issued its final decision on July 18, 2017. Subsequently, the Plaintiff filed this Complaint in October of 2017, and was on notice of the Defendant's intent to seek dismissal or alternatively summary judgment since at least March 6, 2018, when the Defendant filed the Motion to Dismiss the Complaint or, in the alternative, Motion for Summary Judgment. (ECF No. 8.) After filing an Amended Complaint and two requests for extensions of time to respond, the Plaintiff filed his Motion to Defer Ruling over two months later on May 16, 2018. (ECF Nos. 9, 11, 13, 16.)

At this stage in the proceedings, the Plaintiff's request to discover all "[p]ersonnel actions in which Allsyon Stokes served as deciding official, including actions relating to

hiring, firing and discipline, with the employee involved identified by race and sex," is an attempt "to find out if [he] has a claim, rather than that [he] has a claim for which [he] needs . . . discovery." *McKinnon*, 2013 WL 781617, at *11 (quoting *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994)). The information contained in the record of investigation includes the affidavits of Kearse, Stokes, and several other employees and identifying information for the eighteen employees under Stokes' supervision. That information shows that the only area in which the Plaintiff alleges disparate treatment—with respect to the credit hours—was, in fact, not disparate treatment as Stokes required all eighteen diverse employees to submit requests for credit hours and had a legitimate reason for imposing additional requirements on Kearse that were unrelated to his race or gender.

Plaintiff emphasizes that during the administrative proceedings "both parties were intent on taking depositions" that ultimately never occurred, and therefore he now requests to depose Stokes and Binstock. The request for depositions amounts, however, to a "purely speculative hope" that Stokes and Binstock will recant their testimony and reveal a biased decision to terminate Kearse. *McKinnon*, 2013 WL 781617, at *11 ("Plaintiff's purported need for depositions amounts to a 'purely speculative hope that the [selecting officials] will recant their sworn testimony and reveal a long-running and intricately-planned conspiracy' not to hire Plaintiff because of his age." (quoting *Hamilton v. Geithner,* No. 1:08cv1112, 2009 WL 2240358, at *2 (E.D. Va. July 23, 2009))). The record before this Court, along with Plaintiff's counsel's affidavit, reveals no rational basis for believing that through discovery the Plaintiff can discover evidence essential to his opposition, and the Defendant is entitled to summary judgment on the Plaintiff's discrimination and retaliation claims. Therefore, Plaintiff's

Motion to Defer Ruling on Defendant's Motion for Summary Judgment Pending Discovery (ECF No. 16) is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion, treated as a Motion for Summary Judgment, is GRANTED (ECF No. 10) and Judgment is ENTERED in favor of Defendant, and Plaintiff's Motion to Defer Ruling on Defendant's Motion for Summary Judgment Pending Discovery (ECF No. 16) is DENIED.


A separate order follows.

Dated:  December 14, 2018          /s/_____
                                   Richard D. Bennett
                                   United States District Judge